UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NILIANA N. GARCIA,

                Plaintiff,

-against-

UNITED STATES OF AMERICA,

                Defendant,

-and-

ALBERT D. NASSAR,

                Nominal Defendant.

**OPINION AND ORDER**

18 Civ. 2200 (ER)

Ramos, D.J.:

      Niliana N. Garcia ("Garcia") brings this action against the United States of America (the "Government"), alleging an ownership interest in an apartment the Government seized from her former husband and seeking a temporary restraining order on the Government's seizure of the apartment. Before the Court is the Government's motion to dismiss the complaint with prejudice for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1), and for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6). For the reasons set forth below, the Government's motion to dismiss with prejudice is GRANTED.

**I.    BACKGROUND**

    **A.    Factual Background**

      On July 2, 2001, Niliana Garcia and her ex-husband Albert Nassar ("Nassar") created the Nassar Family Irrevocable Trust (the "Trust") with Nassar appointed as the trustee, Garcia as the settlor of the trust, and their two children as the beneficiaries. *See* Compl. ¶¶ 2, 3. In the same

month, the couple separated. *Id*. ¶ 2. On July 31, 2001, Nassar purchased a luxury condominium located at 845 United Nations Plaza, Apartment 53E, New York, New York (the "Apartment"). *Id*. ¶ 4. Nassar transferred the Apartment to the Trust shortly thereafter on October 15, 2001. *Id*. A few years later, on November 18, 2003, the marriage between Nassar and Garcia was dissolved by a Florida court and a divorce settlement agreement ("Divorce Agreement") was executed. *Id*. ¶ 5. In the Divorce Agreement, Nassar agreed to pay Garcia $3,000 per month in child support. *Id*.

The Divorce Agreement also contained a list of marital assets subject to equitable distribution, including the Apartment which was allocated in its entirety to Nassar. Doc. 10-1 at 34. Nassar and Garcia both agreed to "releas[e] the other from all causes of actions, claims, rights or demands whatsoever in law or in equity that either of the Parties ever had, or now has, against the other including, without limitation . . . equitable distribution of property." *Id*. at 19.

In November 2013, the Government filed an action against Nassar and the Trust (collectively, the "Nassar Defendants") in the case captioned *United States v. Nassar*, 13 Civ. 8174 (ER) (the "Foreclosure Action") to collect a long-overdue tax liability of over $2.6 million that Nassar owed the Government. *See Nassar*, 13 Civ. 8174. In September 2016, the Court ruled in favor of the Government in the Foreclosure Action, holding that Nassar transferred the Apartment to the Trust as his nominee and that Nassar was the true property owner, not the Trust. *Nassar Family Irrevocable Trust v. United States*, 13 Civ. 5680 (ER), 13 Civ. 8174 (ER), 2016 WL 5793737, at *9 (S.D.N.Y. Sept. 30, 2016).

In October 2016, Nassar appealed to the United States Court of Appeals for the Second Circuit. The Second Circuit, by summary order, affirmed this Court's judgment in the Foreclosure Action, and held that "Nassar is the beneficial owner of the apartment and the Trust

is his legal title-holding nominee." *United States v. Nassar*, 699 F. App'x 46, 48 (2d Cir. Oct. 20, 2017). After an amended judgment in the Foreclosure Action, the Government is currently foreclosing its tax liens against the Apartment to satisfy its judgment of $2,692,634.56 against Nassar.[1]

In her complaint, Garcia now asserts an ownership interest in the Apartment, arguing that it was not considered as subject to marital distribution during the Florida divorce proceedings. Compl. ¶ 6. Garcia alleges that she did not previously make a claim to the Apartment in connection with the Foreclosure Action because she believed it belonged to the Trust. *Id*. ¶ 10.[2]

In light of the Second Circuit's judgment in the Foreclosure Action, Garcia alleges the Apartment is now converted to marital property subject to equitable distribution, since it was determined that Nassar was always the true owner of the Apartment. Compl. ¶¶ 8, 9. For this reason, she seeks a judicial determination that she has an ownership interest in the Apartment and a temporary restraining order precluding the Government from foreclosing on the Apartment. She also seeks a judicial order applying the proceeds of the sale of the Apartment to satisfy Nassar's overdue child support obligation, which she contends is now over $400,000.

### B. Procedural History

---

[1] The background of this case is set forth in greater detail in this Court's 2016 decision, familiarity which is presumed. *See United States v. Nassar*, 13 Civ. 8174 (ER).

[2] In August 2013, the Trust and its beneficiaries filed a wrongful levy action against the Government ("Levy Action"). In March 2014, the Court consolidated the Levy Action and the Foreclosure Action, granting the Government's motion for summary judgment in the Foreclosure Action and denying Nassar's motion for summary judgment. *See Nassar Family Irrevocable Trust v. United States*, 13 Civ. 5680 (ER). Garcia likely had constructive notice of her unrepresented interest in the Apartment when the Foreclosure Action commenced in 2013, since she is represented here by the same attorney who represented the Trust, the Trust beneficiaries, and Nassar in the Levy Action. *Id*. She had actual notice of her interest no later than November 2014, when she called her daughter, Alyce Nassar ("Alyce"), to discuss Alyce's deposition in the Foreclosure Action. Gov't Decl. Ex. 3. According to Alyce, Garcia "left me a voicemail about [the deposition]," and told Alyce "[j]ust to be careful, and make sure to tell the truth." *Id*.

3

On November 30, 2017, Garcia filed the instant complaint in the Supreme Court of the State of New York, New York County, Index No. 160609/2017, which named the United States of America as a defendant and Albert D. Nassar as a nominal defendant. *See* Compl. On March 12, 2018, the Government removed Garcia's complaint to this Court pursuant to 28 U.S.C. § 1442(a)(1). The Government now moves to dismiss the complaint pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

A district court must dismiss a case under Rule 12(b)(1) for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Lack of subject matter jurisdiction is not waivable and a party or the court may raise it at any time as a reason to dismiss the case. *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003). A plaintiff has the burden of proving that subject matter jurisdiction exists. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). Where the district court relies solely on the pleadings and supporting affidavits, the plaintiff need only make a *prima facie* showing that subject matter jurisdiction exists. *Id.*

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Federal Rules of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III. DISCUSSION

### A. Lack of Subject Matter Jurisdiction

The complaint provides no basis for the exercise of federal subject matter jurisdiction. Federal subject matter jurisdiction exists only when a federal question is presented (28 U.S.C. § 1331), or when there is diversity of citizenship and the amount in controversy exceeds $75,000.00 (28 U.S.C. § 1332). If there is a lack of subject matter jurisdiction, the court must dismiss the complaint in its entirety. *See* Fed. R. Civ. P. 12(h)(3); *see also*, *e.g.*, *Marland v. Heysel*, No. 08 Civ. 3751 (LAK) 2008 WL 2704318, at *3 (S.D.N.Y. July 10, 2008) (dismissing plaintiff's claims because "they fail to allege a basis for subject matter jurisdiction"); *Cooper v. Cianfrocca*, No. 01 Civ. 4749 (LAK), 2001 WL 640808, at *1 (S.D.N.Y. June 7, 2001) (dismissing complaint for "failure to allege facts sufficient to establish subject matter jurisdiction").

Additionally, the United States has sovereign immunity and cannot be sued without its consent or an express waiver by Congress. *See United States v. Mitchell*, 463 U.S. 206, 212

(1983). The government's sovereign immunity may be waived if such a waiver is "'unequivocally expressed' in statutory text, and cannot simply be implied." *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (quoting *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992)). Furthermore, such a waiver will be strictly construed in favor of the sovereign and not enlarged beyond the statutory language. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685-86 (1983) (quoting *E. Transp. Co. v. United States*, 272 U.S. 675, 686 (1927)). Since the doctrine is jurisdictional in nature, "the plaintiff bears the burden of establishing that her claims fall within an applicable waiver." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Here, the United States has not expressed its consent to be sued. Therefore Garcia, as plaintiff in this case, bears the burden of establishing an applicable waiver of sovereign immunity. She has failed to successfully assert any such waiver in her complaint.

Garcia contends 28 U.S.C § 1346(f) is the applicable express waiver of sovereign immunity but asserts this statute as a basis for subject matter jurisdiction in her memorandum, not her complaint. Doc. 21 at 6. Similarly, Garcia suggests that § 1346(f) formed the genesis of the Government's removal of this case from New York state court to this Court. *Id*. However, such an assumption does not have legal merit for deciding subject matter jurisdiction since it is the plaintiff, not the defendant, who bears the burden of establishing that her claims are within a specific waiver and Garcia has not done so in her complaint.

In any event, Garcia's claim fails on the merits. Title 28 U.S.C § 1346(f) provides that "[t]he district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States." 28 U.S.C § 1346(f). However, as the Government correctly points out, "[w]ithout colorable title, [plaintiff] has no basis for a quiet-title suit." *Harrell v. United States*,

13 F.3d 232, 234 (7th Cir. 1993). Section 2409a provides it does not "apply to or affect actions which may be or could have been brought under section . . . 2410 of this title." 28 U.S.C § 2409a(a). In turn, 28 U.S.C § 2410 states that the United States may be named a party in any civil action suit in any district court to quiet title with respect to property on which "the United States has or claims a mortgage or other lien." *Id.* § 2410(a). In this case, the United States has liens on the Apartment and so, § 2410 is applicable. Since § 2410 is an explicit exception to § 2409a, § 1346(f) is not applicable as an express waiver of the United States sovereign immunity.

Therefore, Garcia has failed to establish subject matter jurisdiction for this Court to hear her case and her complaint must be dismissed in its entirety.

### B. Failure to State a Claim

Even if the Court had subject matter jurisdiction over this case, it would still dismiss the complaint for failure to state a claim. The Government argues that Garcia's claim to the Apartment must be dismissed because the Divorce Agreement not only recognized the Apartment as marital property, but in it she "unequivocally relinquished any and all of [her] interests in the Apartment." Doc. 18 at 9. The Government also argues that the Divorce Agreement contradicts Garcia's assertion that the Apartment became marital property only after judgment in the Foreclosure Action. *Id*.

The Divorce Agreement contained a list of Nassar and Garcia's assets and liabilities, including that which the couple deemed marital property subject to equitable distribution. Doc. 10-1 at 34. The Apartment, included in this list under the heading "Nassar Family Trust—Owns New York Property and Bank Account," was marked as marital property. *Id*. Furthermore, the Apartment was marked off in favor of Nassar, as indicated by the "X" mark in the "Husband" column, with a blank space in the "Wife" column for Garcia. *Id*.

7

Garcia states in her complaint that she did not make a claim for the Apartment because she believed the Trust owned it and that it was therefore beyond her reach. Compl. ¶ 10. However, since the Apartment was included in a list of both Nassar and Garcia's assets and liabilities and subsequently marked off in favor of Nassar, Garcia cannot successfully say she believed the Trust owned the Apartment. As such, Garcia's assertion that she was unaware the Apartment was not marital property subject to equitable distribution is without merit.

The Divorce Agreement explicitly states that both Nassar and Garcia agree to "releas[e] the other from all actions, claims, rights or demands whatsoever in law or in equity that either of the Parties ever had, or now has, against the other including, without limitation section . . . equitable distribution of property." Doc. 10-1 at 19. The Divorce Agreement also states that "the law of the State of Florida shall be the operative and binding law for purposes of interpretation, if any, and enforcement and/or modification of this Settlement Agreement." *Id*. at 26.

Garcia argues that the Divorce Agreement is subject to reformation since there was mutual mistake between her and Nassar in their belief that the Apartment was outside the scope of equitable distribution. Doc. 21 at 8. Under Florida law, a marital settlement agreement is "binding and governs the rights and obligations of the parties upon divorce." *Kuchera v. Kuchera*, 983 So. 2d 776, 777 (Fla. 4th Dist. Ct. App. 2008). Florida law further provides that "property settlement agreements between husband and wife made in contemplation of a divorce are, in the absence of fraud, coercion, or overreaching, valid and binding on the parties and should be respected by the courts." *Young v. Young*, 322 So. 2d 594, 596 (Fla. 4th Dist. Ct. App. 1975). Furthermore, the party who seeks to set aside the agreement bears the burden of demonstrating fraud, concealment, or overreaching through competent evidence. *Zakoor v.*

*Zakoor*, 240 So. 2d 193, 197 (Fla. 4th Dist. Ct. App. 1970) (citing *Pemelman v. Pemelman*, 186 So. 2d 552, 554 (Fla. 2nd Dist. Ct. App. 1966)). Garcia fails to provide competent evidence that the Divorce Agreement should be set aside for the reasons listed above.

Therefore, Garcia has failed to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6).

### C. Failure to Intervene

As an additional reason for dismissal, the Government argues this case concerns the same *res* as the previous Foreclosure Action which this Court has already adjudicated. Doc. 24 at 3. The "prior pending action doctrine," as applicable here, provides that courts must avoid duplicative litigation between the same parties addressing the same issues. *Andy Stroud, Inc. v. Brown*, 08 Civ. 8246 (HB), 2009 WL 539863, at *34 (S.D.N.Y. Mar. 4, 2009) (quoting *Curcio v. Hartford Fin. Servs. Group*, 472 F. Supp. 2d 239, 243 (D. Conn. 2007) ("[A] court may dismiss an action when a prior pending action has been filed as long as the controlling issues in the dismissed action will be determined in the other lawsuit.")).

To obtain a temporary restraining order against the Government's foreclosure of the Apartment, Garcia would have needed to file a motion to intervene under Rule 24(a)(2) of the Federal Rules of Civil Procedure, which states the court will permit a timely motion to intervene for anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). However, Garcia's intervention would have been untimely in any event.

"The timeliness of an intervention motion is a matter left to the district court's discretion." *Sherman v. Town of Chester*, No. 12 Civ. 647 (ER), 2015 WL 1473430, at *16 n.20 (S.D.N.Y. Mar. 31, 2015). "In determining whether a motion to intervene is timely, courts consider (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Laroe Estates, Inc. v. Town of Chester*, 828 F.3d 66–67 (2d Cir. 2016) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)). "Rule 24(a) requires courts to measure timeliness from the moment when the applicant had actual or constructive notice of its unrepresented interest." *Kamden-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 135 (S.D.N.Y 2016) (citation omitted). "In most instances, a motion to intervene based on a claim that was known, but not acted upon, for a period of years would be untimely." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.,* 262 F.R.D. 348, 353 (S.D.N.Y. 2009).

The Government correctly states that "the most significant criterion is whether the delay in moving for intervention has prejudiced any of the existed parties." *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000). Also, "post-judgment intervention is generally disfavored because it fosters delay and prejudice to existing parties." *Farmland Dairies v. Comm'r*, 847 F.2d 1038, 1044 (2d Cir. 1998).

Here, Garcia had constructive notice of her allegedly unrepresented interest by at least 2013, when the Foreclosure Action commenced, and actual notice no later than November 2014, when she and her daughter Alyce Nassar discussed Alyce's deposition for that case. Yet, her complaint was filed many years later, in February 2018. Since Garcia has failed to satisfy the

10

threshold requirement of timeliness, she would not have been permitted to intervene as a party in the Foreclosure Action.

## IV. CONCLUSION

For the reasons set forth above, the Government's motion to dismiss with prejudice is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 17, and close the case.

It is SO ORDERED.

Dated: February 19, 2019
       New York, New York

                                      Edgardo Ramos
                                      United States District Judge